STATE, EX REL. JAMES J. SIMON, APPELLEE, v. HARLEY G. MOORHEAD, APPELLANT.

FILED MARCH 16, 1918.   No. 20533.

1. **Regular Army.** "The regular army is the permanent military establishment, which is maintained both in peace and war according to law." 4 U. S. Comp. St. 1916, sec. 1716, p. 3608.

2. **Elections:** SOLDIERS: ELECTIVE FRANCHISE. An elector of this state who enters the military service of the United States to serve during the existing emergency under the provisions of the act of congress of May 18, 1917, is not in the "regular army" as that term is employed in section 3, art. VII of the Constitution, and may exercise the elective franchise at such places and under such conditions as may be provided by law.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*George A. Magney,* for appellant.

*Arthur F. Mullen, contra.*

MORRISSEY, C. J.

Relator presented himself at the office of respondent, election commissioner within and for the metropolitan

State, ex rel. Simon, v. Moorhead.

city of Omaha, and requested that he be registered as a voter in compliance with the statutes of Nebraska. Respondent refused to register relator. This action was then brought in the district court for Douglas county to compel respondent to perform such service. A peremptory writ of mandamus was issued, and respondent has appealed.

Relator possesses all the qualifications required to entitle him to such registration, and is entitled to exercise the right of franchise within the city of Omaha, unless he falls within the prohibition of section 3, art. VII of the Constitution of Nebraska, which reads as follows:

"Every elector in the actual military service of the United States or of this state, and not in the regular army, may exercise the right of suffrage at such place and under such regulations as may be provided by law."

It is admitted that December 9, 1917, relator took the following oath of enlistment: "I, James J. Simon, born in South Omaha, Douglas county, Nebraska, age 21 years and 6 months, by occupation a musician, do hereby acknowledge having voluntarily enlisted this 9th day of December, 1917, as a soldier of the army of the United States of America for the period of the emergency under the conditions prescribed by law, unless sooner discharged by proper authority, and do also agree to accept from the United States such bounty, pay, rations and clothing as are or may be established by law, and I do solemnly swear that I will bear true faith and allegiance to the United States of America; that I will serve it honestly and faithfully against all its enemies whomsoever; that I will obey the orders of the officers appointed over me according to the rules and articles of war."

At the suing out of this writ relator was stationed at Fort Crook, Nebraska, engaged in the military service of the United States. We are called upon to construe the paragraph of the Constitution above set

out. It will serve no useful purpose to review at length the history of this provision of the Constitution, or to assign reasons for its adoption.

"The regular army is the permanent military establishment, which is maintained both in peace and war according to law." This declaration of congress is in harmony with the generally accepted meaning of the term, and is no doubt the organization which the framers of our organic law had in mind when they drafted the section under consideration.

June 3, 1916, congress passed an act, entitled "An act for making further and more effec'ual provisions for the national defense, and for other purposes." 39 U. S. St. at Large, ch. 134, p. 166. Section 1 thereof providès: "The army of the United States shall consist of the Regular Army, the Volunteer Army, the Officers Reserve Corps, the Enlisted Reserve Corps, the National Guard, while in the service of the United States, and such other land forces as are now or may hereafter be authorized by law."

It is clear from the language of this section that congress recognized a dividing line between "the permanent military establishment, which is maintained both in peace and war," and generally known as the "Regular Army" and the other branches of our military service.

May 18, 1917, congress passed an act, entitled "An act to authorize the president to increase temporarily the military establishment of the United States." U. S. Statutes, 1st Sess. Sixty-fifth Congress, p. 76. The opening sentence thereof reads: "That in view of the existing emergency, which demands the raising of troops in addition to those now available, the president be, and . he is hereby authorized." This act is supplemental to the act of June 3, 1916. It authorizes voluntary enlistments in all the military branches of the government, and also authorizes the president to draft into the military service of the United States the various military organizations and individuals falling within

the classes therein prescribed, "for the period of the existing emergency." Like the act of June 3, 1916, it mentions the various military organizations, and distinguishes between the regular army and the other military organizations. It is apparent that congress by the passage of this act recognized a dividing line between the professional soldier who serves "in peace and war" and the man who enlists for the term of "the emergency" under the act of May 18, 1917.

As this section of the Constitution expressly provides. for allowing electors not in the regular army to exercise the right of suffrage, it follows that electors of this state who have entered the military service under any of the provisions of the act of May 18, 1917, may be allowed such right. As the word "army" is, by some authorities, said to be of such general signification that it may be construed to include within its terms persons employed in the navy, we deem it advisable to point out that the section of the Constitution we are considering makes no prohibition whatever against those serving in the navy in any of its branches.

The legislature has the right to enact such legislation as will enable electors of this state to exercise the elective franchise, notwithstanding they have entered the military or naval service of the United States under the provisions of the act of May 18, 1917, to serve during the existing emergency.

AFFIRMED.